[No. 2241]

STATE OF NEVADA, Ex Rel. F. FREYESLEBEN, AUSTRO-HUNGARIAN CONSUL, RELATOR, *v.* NINTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF WHITE PINE, AND HON. C. J. McFADDEN, JUDGE OF SAID COURT, RESPONDENTS.

[161 Pac. 510]

1. MANDAMUS—REMEDY BY APPEAL—REFUSING REMOVAL OF ADMINISTRATOR.

Where a petition was presented in the district court for removal of an administrator, setting up his alleged wrongful acts, and, after hearing both petitioner and respondent, decision was rendered dismissing the petition, such action was not reviewable by *mandamus*, since the court exercised jurisdiction and discretion in hearing and deciding the case and petitioner had a plain, speedy, and adequate remedy at law by appeal from such decision under Rev. Laws, 6112, providing for appeal from decisions in probate matters.

2. MANDAMUS—FUNCTION OF WRIT.

*Mandamus* will lie to compel a certain prescribed duty to be assumed by a tribunal, board, or officer, but will not operate beyond a point where that tribunal, board, or officer has the right to exercise discretion.

3. MANDAMUS—SCOPE—REMEDY BY WRIT OF ERROR.

Writ of *mandamus* will not assume the function of a writ of error, nor will it serve to require an inferior tribunal to act in any particular manner or to enter any particular judgment or order.

ORIGINAL PROCEEDING in *mandamus* by the State, on the relation of F. Freyesleben, Austro-Hungarian Consul, against the Ninth Judicial District Court in and for the county of White Pine, and another. **Writ denied.**

*A. G. Breeland,* for Relator:

It is the duty of respondent to receive the petition of relator and to pass upon the evidence submitted. A consideration of the evidence will disclose that it

is the imperative duty of respondent to remove the administrator of the estate. (Rev. Laws, 6097.)

When a court refuses jurisdiction of a subject-matter properly before it for determination, *mandamus* is the proper remedy. (*State* v. *Moran*, 37 Nev. 404.) Respondent was without power to dismiss the petition. (Rev. Laws, 5236.) No appeal lies from such an order in probate proceedings. (Rev. Laws, 6112.)

*G. F. Boreman* and *A. Jurich*, for Respondents:

Under numerous decisions of this court upon similar applications, the writ of mandate will not issue to review or correct alleged errors of the inferior court after it has acted upon a matter before it, nor to control judicial discretion or revise judicial action. (*Cavanaugh* v. *Wright*, 2 Nev. 166; *State* v. *Wright*, 4 Nev. 119; *State* v. *Commissioners*, 8 Nev. 309; *Floral Springs M. Co.* v. *Rives*, 14 Nev. 431; *State* v. *Murphy*, 19 Nev. 89; *State* v. *Curler*, 26 Nev. 356; *Floyd* v. *District Court*, 36 Nev. 349.)

If relator desired to have this court review the action of the district court in deciding adversely to him upon his petition for the removal of the administrator, he had a plain, speedy, and adequate remedy by appeal; and therefore is not in a position to invoke this extraordinary remedy. This court has heretofore held that an appeal will lie from an order refusing to revoke letters of administration. (*In Re Bailey's Estate*, 31 Nev. 377.) The relator's remedy was by appeal from the order of the inferior court. (Rev. Laws, 6112.)

By the Court, McCARRAN, J.:

This is an original proceeding in *mandamus*.

On November 22, 1911, one A. B. Witcher, of Ely, White Pine County, Nevada, was appointed administrator of the estate of Thomas Odolovich, deceased. Subsequently, proceedings were instituted in the lower court, by and through the representatives of the Austro-Hungarian consul, for the removal of the administrator theretofore

appointed, and for the appointment of J. B. Dixon, Esq. The petition presented in the lower court for the removal of the administrator sets up, among other things, the assumption of control by A. B. Witcher as administrator of the estate of Thomas Odolovich, deceased; the filing by the administrator of an inventory and appraisement of the property and effects belonging to the estate; and certain other acts on the part of the administrator, such as a compromise settlement with the Giroux Consolidated Mining Company for the death of the deceased, the sale and disposition of certain property by the administrator, alleging in this respect failure on the part of the administrator to properly or legally conduct such sale and failure to make proper accounting for the proceeds thereof. The petition further relates failure on the part of the administrator to properly save and preserve property and effects of the estate.

The administrator, being cited to appear and show cause why his letters should not be revoked, responded by answer. On the hearing by the lower court, evidence was offered pro and con the several matters raised by the petition; and after the submission of the matter, an order was made, which we find in the following words:

"In view of the authorities cited and the showing made at the hearing, the petition for a dismissal of the administrator, A. B. Witcher, will be denied, and the petition dismissed, with costs against petitioners, and it is so ordered."

Petitioner in the lower court comes here by original proceedings in *mandamus* praying that the writ issue commanding the district court:

" (1) To vacate the order of said court denying and dismissing the relator's petition for the removal of the administrator, to restore the petition on the calendar in said court for further proceedings, and to allow the appearance of the said Austro-Hungarian consul on behalf of said alleged heirs, and to decide said matter upon its merits.

" (2) To vacate the order of said court refusing and disallowing the application of said consul for a continuance of the hearing upon the account of the administrator and refusing counsel additional time in which to file exceptions to the account.

" (3) To vacate the order of said district court approving the amount of the account of the administrator and to declare that said account be declared open for filing objections, and that the consul be allowed to appear therein and be allowed a reasonable time to prepare and file objections to said account."

The right of petitioner to a writ of *mandamus* is challenged by respondent, upon the ground that the matter was regularly heard and determined by the lower court and therefore *mandamus* will not lie to review the proceedings; further, that petitioner here has a plain, speedy, and adequate remedy in the ordinary course of law.

In the case of *Floyd* v. *District Court,* 36 Nev. 352, 135 Pac. 923, we said:

"In a case where the district court takes jurisdiction and acts, its acts will not be subject to review by a writ of mandate, but where such tribunal refuses to take jurisdiction at all, when by law it ought to do so, or where having obtained jurisdiction it refuses to proceed in its exercise, *mandamus* is the proper remedy. Errors committed in the exercise of judicial discretion cannot be made the subject of review, nor can they be corrected by a writ of *mandamus,* but where a district court erroneously decides that it has no jurisdiction, the writ of *mandamus* is the proper remedy to compel that tribunal to do that which the law prescribes it should do—assume jurisdiction and proceed with the cause."

In the light of this rule, we review the record as it is before us in the petition. We find an application to revoke letters of administration. Under this application, evidence parole and documentary was introduced, entertained, and considered by the lower court. Both petitioner, as representative of the foreign consul, and the administrator theretofore appointed in the matter of the

estate offered and had introduced evidence in support of their respective contentions. At the conclusion of the proceedings the matter was submitted to the lower court and was by the judge of that court taken under consideration and advisement. Later a decision was arrived at and rendered by the judge of the lower court, which decision is concluded in the language heretofore quoted.

Cases such as the one at bar are to be distinguished from those presenting a record which clearly shows that the lower court refused to act judicially in the determination of a question of fact duly presented, or erroneously divested itself of jurisdiction. The line that divides these two classes of cases is, we think, well expressed by the words of Mr. Justice Christiancy, speaking for the Supreme Court of Michigan in the case of *People ex rel. Wiley* v. *Judge of Allegan Circuit,* wherein he said:

"I think the true principle upon which a majority of the cases may be reconciled is that if the inferior court has acted judicially in the determination of a question of fact, or a question of law, at least if the latter be one properly arising upon the case itself, and not some collateral motion or matter—that is, if the case or proceeding before it, upon the facts raised the particular question in such a shape as to give the power judicially thus to determine it—then such determination, however erroneous, cannot be reviewed, nor can any order the court may have made, or action it may have taken in consequence of it, be disturbed or reversed or reviewed by *mandamus,* if the action or order be such as would be justified by the same decision or determination when correctly made." (*People ex rel. Wiley* v. *Judge of Allegan Circuit,* 29 Mich. 487.)

1, 2. In the case at bar, the district court assumed jurisdiction, entertained the proceedings, heard the evidence in support of petitioner's contention, and rendered a determinative judgment based upon the showing made, and either a correct or incorrect interpretation of the law applicable to the specific question in furtherance of which the showing was made. What more could the

lower court do if the writ were to issue now? Would it reverse its judgment entered upon the showing made? Would it take a different view of the law arising upon the case? Is it the function of the writ of mandate to review errors of discretion or judgment and reverse decisions based thereon? An answer to such query is found in the established principles of law applicable to the function of this extraordinary writ, which may be stated thus: The acts or duties, the performance or nonperformance of which rests in whole or in part on the discretion or judgment of the inferior tribunal, board, or officer, will not be required by the writ of *mandamus.* On the other hand, duties which are in their nature purely ministerial, or which are by law clearly and specifically required to be performed, and in the performance of which no element of discretion may be exercised by the tribunal, officer, or board required so to do, will be compelled by the writ. The rule may be otherwise stated that the writ will lie to set in motion the machinery of the law, so to speak, whereby a specifically prescribed duty must be assumed by a given tribunal, board, or officer, but will not operate beyond the point where that tribunal, board, or officer has the right to exercise any degree of discretion and judgment. (High's Extraordinary Legal Remedies, sec. 24.)

**3.** It needs no citation of authority to support the well-established rule that the writ of *mandamus* will not assume the function of a writ of error, nor will it serve to require the inferior tribunal to act in a particular manner or to enter any particular judgment or order. On the contrary, it serves only to compel the doing of some act which it is the clear, legal duty of the lower court in some way to do.

The Supreme Court of the State of Colorado, in the case of *People ex rel. Denison* v. *Butler*, 24 Colo. 401, 51 Pac. 510, ably reviewed the question here under consideration, and the decision of that court goes a long ways to support the position we take here. As we view the question here presented, petitioner might have availed

himself of that plain, speedy, and adequate remedy laid down by our code of civil procedure (Civil Practice Act, sec. 255; Rev. Laws, 6112), wherein it is prescribed:

"Any person interested in, affected by, and aggrieved at the decision and decree of the district court appointing an executor or administrator, revoking letters, allowing a final account, or disallowing it, decreeing a distribution or partition, order or decree, confirming or setting aside a report of commissioners, admitting or refusing a will for probate, and any other decision wherein the amount in controversy equals or exceeds, exclusive of costs, one thousand dollars, may appeal to the supreme court of the state, to be governed in all respects as an appeal from a final decision and judgment in action at law."

This court, in passing upon the question of appeal in matters of this kind, in the case of *In Re Bailey's Estate,* 31 Nev. 377, referred to this statute and said:

"From a mere reading of this section, and the circumstances disclosed by the record in this case, it is clearly manifest to us that an appeal will lie from the order refusing to revoke letters of administration."

It has been repeatedly held by this court that under the provisions of our statute *mandamus* will not lie where there is a plain, speedy, and adequate remedy at law. (*State* v. *Guerrero,* 12 Nev. 105; *Mayberry* v. *Bowker,* 14 Nev. 336; *State* v. *Boerlin,* 30 Nev. 473.)

For the reasons herein set forth, the writ as prayed for should be denied.

It is so ordered.